IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:25-CR-61 |
| | ) | |
| AUDRICUS PHAGNASAY | ) | |

## PLEA AGREEMENT

The Defendant, AUDRICUS PHAGNASAY, represented by his counsel Holly Chapman, and the United States of America, represented by Assistant United States Attorney L. Alexander Hamner and Trial Attorney Jacques Singer-Emery, have reached a plea agreement in this case. The terms and conditions of that agreement are as follows.

1.    Guilty Plea

The Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to Count One of the Information, which charges a violation of 18 U.S.C. § 1349, Wire Fraud Conspiracy.

2.    Elements and Factual Basis

The elements necessary to prove the offense charged in Count One are:

First:      Two or more persons, on some way or manner, agree to violate 18
            U.S.C. § 1343, Wire Fraud.

Second:     Defendant knew the unlawful purpose and willfully joined in it.

The Defendant agrees that he is, in fact, guilty of this offense. He agrees to the accuracy of the following facts, which satisfy each of the required elements of the offense charged in Count One of the Indictment:

Since 2003, the government of the Democratic People's Republic of Korea ("DPRK" or "North Korea") has been under sanction by the United Nations ("U.N.") due to, among other things, its nuclear weapons program. Since 2016, the United States has likewise had comprehensive trade and economic sanctions against North Korea due to the national security threats posed by North Korea, including its nuclear weapons program. The sanctions effectively cut North Korea off from the U.S. marketplace and financial system and restricted the ability of U.S. persons and companies from doing business with DPRK institutions. As a result, North Korea has sponsored a variety of schemes to evade the U.S. and U.N. sanctions and earn money for the regime.

One such scheme involves the use of highly skilled information technology ("IT") workers to obtain remote, pseudonymous employment with companies around the world, including the United States, using false or stolen identities. According to a May 2022 advisory by the Department of State, the Department of the Treasury, and the Federal Bureau of Investigation, the DPRK has dispatched thousands of IT workers around the world, earning revenue that contributes to the DPRK's weapons programs, in violation of U.S. and U.N. sanctions.

These workers: (i) misrepresent themselves as foreign (non-DPRK) or U.S.-based remote workers using false or stolen identification documents; (ii) obfuscate their location  using virtual private networks ("VPNs"), virtual private servers ("VPSs"), third- country internet protocol ("IP") addresses, and proxy accounts; (iii) surreptitiously obtain remote IT jobs with companies spanning a range of sectors and

industries around the world; (iv) develop applications and software for their employers; (v) in some instances, use privileged access gained through such employment for other illicit purposes, including enabling malicious cyber intrusions into an employer's network; and (vi) use U.S. financial institutions to launder wages paid by employers to overseas accounts controlled by DPRK actors and their co-conspirators. DPRK IT workers often enlist U.S. persons to facilitate remote employment schemes.

In furtherance of a remote IT worker scheme, from on or about December 10, 2019, until on or about December 13, 2021, the Defendant knowingly allowed his identity to be used by overseas IT workers and others known and unknown to: (1) create resumes in the Defendant's name with false information about his experience; (2) use those false representations and the Defendant's identity to obtain employment with U.S. companies; (3) pass employer vetting procedures such as video interviews; and (4) open financial services accounts in the Defendant's name to receive payments from U.S. companies for work the Defendant was not performing.

The Defendant received laptops at his home provided by U.S. companies to overseas IT workers who were using the Defendant's identity. The Defendant also installed unauthorized remote access software on company-provided laptops and allowed overseas IT workers using his identity to access the laptops remotely to complete tasks assigned by the U.S. companies. Because these IT workers remotely accessed laptops located in the Defendant's home, it appeared to the U.S. company employers that the Defendant was performing assigned work from his home in the

United States.

The Defendant's actions caused at least ten U.S. companies to hire one or more overseas IT workers and pay those individuals a combined total of over $680,000 in salary. For his participation in this scheme, the Defendant received at least $3,450.

The Defendant agrees the government would have proven the foregoing facts beyond a reasonable doubt at any trial on the merits.

3.    Possible Sentence

The Defendant's guilty plea will subject him to the following possible sentence: a term of imprisonment for not more than twenty (20) years, a fine of not more than $250,000, a term of supervised release of not more than 3 years, such restitution as may be ordered by the Court, and forfeiture of all forfeitable assets. The Court additionally must impose a $100 special assessment per count of conviction.

4.    No Promised Sentence

No one has promised the Defendant that the Court will impose any particular sentence or a sentence within any particular range. The Court is not bound by any estimate of sentence given or recommendations made by the Defendant's counsel, the Government, the United States Probation Office, or anyone else. The Court may impose a sentence up to the statutory maximum. The Defendant will not be allowed to withdraw his plea of guilty if he receives a more severe sentence than he expects.

5.    Court's Use of Sentencing Guidelines

The Court is obligated to use the United States Sentencing Guidelines to calculate the applicable guideline range for the Defendant's offense. The Sentencing

Guidelines are advisory: the Court is not required to impose a sentence within the range those Guidelines suggest. The Court will consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a) in determining the Defendant's sentence. The Sentencing Guidelines are based on <u>all</u> of the Defendant's relevant conduct, pursuant to Section 1B1.3 of the Sentencing Guidelines, not just the conduct underlying the particular offense to which the Defendant is pleading guilty.

6.    <u>Agreements Regarding Sentencing Guidelines</u>

     a.    <u>Use of Information</u>

Nothing in this agreement precludes the Government from providing full and accurate information to the Court and U.S. Probation Office for use in calculating the applicable Sentencing Guidelines range. However, pursuant to United States Sentencing Guideline Section 1B1.8, any incriminating information provided by the Defendant during any cooperation will not be used in determining his applicable Guidelines range.

     b.    <u>Acceptance of Responsibility</u>

If the Court determines that the Defendant qualifies for an adjustment under Section 3E1.1(a) of the Sentencing Guidelines and the offense level prior to operation of that section is 16 or greater, the Government will move for an additional 1-level reduction in offense level pursuant to Section 3E1.1(b) based on the Defendant's timely notification of his intention to enter a guilty plea.

7.    <u>Forfeiture of Property</u>

a.    The Defendant hereby agrees to the entry of an Order of Forfeiture reflecting a money judgment in the amount of $681,926, said sum constituting the amount of money fraudulently obtained by use of the Defendant's accounts and information.

b.    The Defendant acknowledges that the government may move at any time, pursuant to Fed. R. Crim. P. 32.2(e) to forfeit as substitute assets specific property of the Defendant having a value up to the amount of the money judgment entered by the Court.  In the event the government exercises its right to forfeit substitute assets, the Defendant agrees to take all steps requested by the government to pass clear title to the substitute property to the government.

c.    The Defendant agrees to hold the government and its agents and employees harmless from any claims made in connection with the seizure, forfeiture, or disposal of property connected to this case.  The Defendant further agrees to waive the requirements of the Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

d.    The Defendant waives and abandons the Defendant's interest in any other property that may have been seized in connection with this case.  Additionally, the Defendant waives any and all challenges on any grounds to the seizure, forfeiture, and disposal of any property seized in connection with this case.  The Defendant

specifically agrees to waive any challenges arising under the Double Jeopardy Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment.

8.    Cooperation

    a.    <u>Complete and Truthful Cooperation Required</u>

If the Defendant cooperates, he must provide full, complete, candid, and truthful cooperation in the investigation and prosecution of the offenses charged in the Defendant's Indictment and any related offenses. The Defendant shall fully and truthfully disclose the Defendant's knowledge of those offenses and shall fully and truthfully answer any question put to him by law enforcement officers about those offenses.

This agreement does not require the Defendant to "make a case" against any particular person. The Defendant's benefits under this agreement are conditioned only on the Defendant's cooperation and truthfulness, not on the outcome of any trial, grand jury, or other proceeding.

    b.    <u>Motion for Reduction in Sentence Based on Cooperation</u>

The government, in its sole discretion, will decide whether the Defendant's cooperation qualifies as "substantial assistance" pursuant to U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35 and thereby warrants the filing of a motion for downward departure or reduction in the Defendant's sentence. If such a motion is filed, the Court, in its sole discretion, will decide whether, and to what extent, the Defendant's sentence should be reduced. The Court is not required to accept any recommendation by the government that the Defendant's sentence be reduced.

9.    <u>Financial Obligations and Agreements</u>

    a.    <u>Restitution</u>

The amount of restitution ordered by the Court shall include restitution for the full loss caused by the Defendant's total criminal conduct. Restitution is not limited to the specific count to which the Defendant is pleading guilty. Any restitution judgment is intended to and will survive the Defendant, notwithstanding the abatement of any underlying criminal conviction.

    b.    <u>Special Assessment</u>

The Defendant agrees to pay a special assessment in the amount of $100, payable to the Clerk of the United States District Court, which shall be due immediately at the time of sentencing.

    c.    <u>Required Financial Disclosures</u>

By the date that the Defendant enters a guilty plea, the Defendant shall complete a financial disclosure form listing all the Defendant's assets and financial interests, whether held directly or indirectly, solely or jointly, in the Defendant's name or in the name of another. The Defendant shall sign the financial disclosure form under penalty of perjury and provide that form to the Financial Litigation Unit of the United States Attorney's Office and to the United States Probation Office. The Defendant authorizes the United States to obtain credit reports on the Defendant and to share the contents of those reports with the Court and the United States Probation Office. The Defendant also authorizes the United States Attorney's Office to inspect

and copy all financial documents and information held by the United States Probation Office.

      d.    <u>Financial Examination</u>

The Defendant will submit to an examination under oath on the issue of the Defendant's financial disclosures and assets if deemed necessary by the United States. Such examination will occur not later than 30 days after the entry of the Defendant's guilty plea.

      e.    <u>No Transfer of Assets</u>

The Defendant certifies that the Defendant has made no transfer of assets in contemplations of this prosecution for the purpose of evading or defeating financial obligations or forfeiture created by this Agreement or that may be imposed upon the Defendant by the Court at sentencing. The Defendant promises that the Defendant will make no such transfers in the future.

      f.    <u>Material Change in Circumstances</u>

The Defendant agrees to notify the United States of any material change in circumstances, as described in 18 U.S.C. § 3664(k), that occurs prior to sentencing in this case. Such notification will be made within seven days of the event giving rise to the changed circumstances, and in no event later than the date of sentencing.

      g.    <u>Enforcement</u>

Any payment schedule imposed by the Court is without prejudice to the United States to take all actions and remedies available to it to collect the full amount of the financial obligations imposed by the judgment of the Court in this case. The

9

Defendant understands and agrees that the financial obligations and forfeiture imposed by the judgment of the Court in this case will be placed on the Treasury Offset Program so that any federal payment that the Defendant receives may be offset and applied to the judgment debt without regard to or affecting any payment schedule imposed by the Court.

10.    <u>Waivers</u>

    a.    <u>Waiver of Appeal</u>

The Defendant entirely waives his right to a direct appeal of his conviction and sentence on any ground, including any argument that the statutes to which the Defendant is pleading guilty are unconstitutional or that the admitted conduct does not fall within the scope of those statutes. The only exceptions are that the Defendant may file a direct appeal of his sentence if (1) the Court enters a sentence above the statutory maximum; (2) the Court enters a sentence above the advisory Sentencing Guidelines range found to apply by the Court at sentencing; or (3) the Government appeals the sentence. Absent those exceptions, the Defendant explicitly and irrevocably instructs his attorney not to file an appeal.

    b.    <u>Waiver of Collateral Attack</u>

The Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion. The only exception is that the Defendant may collaterally attack his conviction and sentence based on a claim of ineffective assistance of counsel.

c.    FOIA and Privacy Act Waiver

The Defendant waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any record pertaining to the investigation or prosecution of this case under the authority of the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, and all subsequent amendments thereto.

d.    Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 Waiver

Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence ordinarily limit the admissibility of statements made by a defendant during the course of plea discussions or plea proceedings. The Defendant knowingly and voluntarily waives the protections of these rules. If the Defendant fails to plead guilty, or his plea of guilty is later withdrawn, all of the Defendant's statements in connection with this plea, and any leads derived therefrom, shall be admissible for any and all purposes.

11.  Defendant's Rights

The Defendant has the right to be represented by counsel, and if necessary have the Court appoint counsel, at trial and at every other critical stage of the proceeding. The Defendant possesses a number of rights that he will waive by pleading guilty, including the right to plead not guilty, or having already so pleaded, to persist in that plea; the right to a jury trial; and the right at trial to confront and cross-examine adverse witnesses, be protected from compelled self-incrimination, testify and present evidence, and compel the attendance of witnesses.

11

12.    <u>Satisfaction with Counsel</u>

The Defendant has had the benefit of legal counsel in negotiating this agreement. The Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney.

13.    <u>Breach of Plea Agreement</u>

If the Defendant fails to plead guilty, withdraws or attempts to withdraw his guilty plea, commits any new criminal conduct following the execution of this agreement, or otherwise breaches this agreement, the Government is released from all of its agreements regarding the Defendant's sentence, including any agreements regarding the calculation of the Defendant's advisory Sentencing Guidelines. In addition, the Government may declare the plea agreement null and void, reinstate any counts that may have been dismissed pursuant to the plea agreement, and file new charges against the Defendant that might otherwise be barred by this plea agreement. The Defendant waives any statute-of-limitations or speedy trial defense to prosecutions reinstated or commenced under this paragraph.

14.    <u>Entire Agreement</u>

This agreement contains the entire agreement between the Government and the Defendant.

MARGARET E. HEAP
UNITED STATES ATTORNEY

8/21/25
Date

E. Greg Gilluly
Deputy Chief, Criminal Division

8/21/25
Date

L. Alexander Hamner
Indiana Bar No. 31996-41
Assistant United States Attorney

8/21/2025
Date

Jacques Singer-Emery
Trial Attorney
U.S. Department of Justice
National Security Division

13

I have read and carefully reviewed this agreement with my attorney. I understand each provision of this agreement, and I voluntarily agree to it. I hereby stipulate that the factual basis set out therein is true and accurate in every respect.

08-20-2025
_____    _____
Date                                AUDRICUS PHAGNASAY
                                    Defendant


I have fully explained to the Defendant all of his rights, and I have carefully reviewed each and every part of this agreement with him. I believe that he fully and completely understands it, and that his decision to enter into this agreement is an informed, intelligent, and voluntary one.

8/20/2025
_____    _____
Date                                Holly Chapman
                                    Counsel for Defendant

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

|                              |   |              |
|------------------------------|---|--------------|
| UNITED STATES OF AMERICA     | ) |              |
|                              | ) |              |
| v.                           | ) | 1:25-CR-61   |
| AUDRICUS PHAGNASAY           | ) |              |
|                              | ) |              |

## ORDER

The aforesaid Plea Agreement, having been considered by the Court in conjunction with the interrogation by the Court of Defendant the Defendant's attorney at a hearing on the Defendant's motion to change Defendant's plea and the Court finding that the plea of guilty is made freely, voluntarily and knowingly, it is thereupon,

ORDERED that the plea of guilty by Defendant be, and it is, hereby accepted and the foregoing Plea Agreement be, and it is, hereby ratified and confirmed.

This 13th day of November 2025.

_____
THE HONORABLE J. RANDAL HALL
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA